UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| PAUL BELTON | CIVIL DOCKET NO. 1:19-CV-00133 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| THE GEO GROUP, INC. | MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment ("Motion") [Doc. 27] filed by Defendant, The GEO Group, Inc. For the reasons which follow, the Defendant's Motion is GRANTED.

### PROCEDURAL HISTORY

On December 12, 2018, Paul Belton, ("Plaintiff" or "Belton"), a discharged corrections officer, filed suit against his former employer, The GEO Group, Inc. ("GEO" or "Defendant"), in the 28th Judicial District Court, Lasalle Parish, Louisiana, asserting federal law discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as well as state law discrimination and tort claims. [Doc. 9-2, p.3-7]. On February 1, 2019, Defendant filed a Notice of Removal in the United States District Court for the Western District of Louisiana, Alexandria Division, based on federal question jurisdiction, 28 U.S.C. § 1331. [Doc. 1 ¶ 6]. On February 8, 2019, Defendant filed its Answer. [Doc. 8]. On December 28, 2020, Defendant filed this Motion [Doc. 27], to which Plaintiff filed an Opposition [Doc. 32] and the Defendant a Reply. [Doc. 35].

Defendant contends that all of Plaintiff's claims are time-barred under the applicable statute of limitations and/or prescriptive periods or barred because Plaintiff has failed to exhaust his administrative remedies. [Doc. 27-2, p.2]. In the alternative, Defendant argues that Plaintiff's claims raise no genuine issues of material fact for trial and that the Court should enter summary judgment in its favor. [*Id*.]. For the reasons listed below, Defendant is entitled to summary judgment on all claims.

## **FACTUAL BACKGROUND**

In 2014, Defendant hired Plaintiff, a black male, to work as a correctional officer at its Lasalle Detention Facility. [Doc. 27-2, p.2]. On March 28, 2017, Sergeant Tammy Roberts ("Roberts"), a white female, accused Plaintiff of sexual harassment while they were at work. [Doc. 32, p. 4]. Defendant contacted the Jena Police Department, who sent officers to interview both Plaintiff and Roberts regarding the alleged incident. [*Id.*; Doc. 32-6, p.2]. The next day, on March 29, 2017, GEO placed Plaintiff on administrative leave. [Doc. 32, p.5]. Thereafter, on April 10, 2017, the district attorney charged Plaintiff with the criminal offense of simple battery. [Doc. 32, p.5; *see* Doc. 27-4, p.23]. On August 7, 2017, while Belton was still on administrative leave and with pending criminal charges, Defendant terminated Plaintiff's employment. [Doc. 32, p.5; *see* Doc. 32-6]. In 2018, the criminal charges against Plaintiff were dismissed. [*See* Doc. 32-8].

## LAW AND ANALYSIS

**I.      Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet its burden. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the

record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

## II. Timeliness of Plaintiff's Title VII Discrimination Claims

Defendant contends that, as a threshold matter, Plaintiff's Title VII discrimination claims should be dismissed because Plaintiff filed his Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") after the 300-day filing period had ended – thereby failing to properly exhaust his administrative remedies prior to filing suit. [Doc. 27-2, p.6-7]. Plaintiff does not dispute the applicability of the 300-day filing period; however, the parties disagree about the date on which the filing period began to accrue. [Doc. 32, p.7-8]. Defendant maintains that the 300-day filing period commenced, at the latest, on August 7, 2017, the day Plaintiff was terminated. [*See* Doc. 27-2, p.7]. Thus, Plaintiff's EEOC Charge filed 358 days later, on July 31, 2018, was untimely. [*Id.*]. Plaintiff argues that the 300-day time period did not begin to run until on or about November 28, 2017, when Plaintiff "became aware of the discriminatory action," making his EEOC Charge timely. [Doc. 32, p.5].[1]

A federal district court may hear a Title VII lawsuit only after the aggrieved party has both: (i) exhausted his or her administrative remedies, and (ii) filed suit within the applicable time period after receiving a right to sue notice from the EEOC. *Taylor v. Books-A-Million*, 296 F.3d 376, 378-79 (5th Cir. 2002). Exhaustion is deemed to have occurred after the complainant files a timely EEOC Charge with the

---

[1] Plaintiff does not argue that he was unaware of his termination until November 28, 2017, but rather that he was unaware of Defendant's discriminatory *motive* until that date.

EEOC and receives a notice of right to sue.[2] 42 U.S.C. §§ 2000e–5(e),(f); *see also Taylor*, 296 F.3d at 379. A Title VII plaintiff must file an EEOC Charge no more than 180 days after the alleged discriminatory employment action occurred. 42 U.S.C.§ 2000e-5(e)(1). However, in a deferral state, such as Louisiana, the "time period is extended to 300 days." *Conner v. Louisiana Dep't of Health & Hospitals*, 247 Fed. Appx. 480, 481 (5th Cir. 2007).[3]

In determining when the EEOC filing period begins to accrue, the Fifth Circuit has "consistently focused on the date that plaintiff knew of the discriminatory *act*." *Abels v. Braithwaite*, 832 Fed. Appx. 335, 336 (5th Cir. 2020) (quoting *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986)); *see id*. ("[T]he limitations period starts running on the date the discriminatory *act* occurs."); *see also Miller v. Potter*, 359 Fed. Appx. 535, 537 (5th Cir. 2010) (per curiam) ("To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints." (quoting *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992))). Thus, the date that Plaintiff first *perceived* that a discriminatory *motive*

---

[2] The notice of right to sue notifies a complainant that the EEOC has had an opportunity to investigate the complaint, that all administrative remedies have been exhausted, and that the recipient may initiate an action in federal court. *See* 42 U.S.C. § 2000e–5(f)(1).

[3] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice." *Deleon v. General Insulation, Inc.*, 575 Fed. Appx. 292, 293 n.1 (5th Cir. 2014) (citing *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 765 n.1 (5th Cir. 1988)). The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a "deferral state." *See* La. R.S. 51:2231, *et seq.*

caused his termination, if different than the date on which the alleged discriminatory employment action occurred, is immaterial.

Here, the alleged discriminatory act occurred on August 7, 2017, the date GEO terminated Plaintiff's employment. Plaintiff did not file his EEOC Charge until July 31, 2018, 358 days later, and after the expiration of the 300-day filing period. Accordingly, Defendant's Motion is granted as to Plaintiff's discrimination claims pursuant to Title VII.[4]

### III. Timeliness of Plaintiff's Section 1981 Claim

Defendant likewise maintains that Plaintiff's Section 1981 claim is time-barred under the applicable one-year statute of limitations. [Doc. 27-2, p.7-8]. Plaintiff argues his claim is timely because the one-year period is subject to tolling. [Doc. 32, p.9-10]. Section 1981 does not contain a statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." *Id.* (quoting *Goodman v. Lukens Steel Co.*, 482

---

[4] The Court notes that Plaintiff's Title VII claims also include a hostile work environment claim that Plaintiff contends is subject to the continuing violations doctrine. The continuing violations doctrine is an equitable doctrine that "extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). The U.S. Supreme Court has stated that hostile work environment claims are actionable and "'will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the [300-day] time period.'" *Id.* (quoting *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). However, the latest date that such an act could have occurred is the last day of Plaintiff's employment. Accordingly, even if applicable, the continuing violations doctrine would not remedy Plaintiff's failure to timely file his EEOC Charge and preserve Plaintiff's hostile work environment claim.

U.S. 656, 660 (1987)). Under Louisiana law, "[a] Section 1981 claim is best characterized as a tort ... and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by La Civ. Code Art. 3492." *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. *See* 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than four years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union*, 491 U.S. 164, 179 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." *Jones*, 541 U.S. at 373 (citing *Patterson*, 491 U.S. 164). "Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract." *Culbert v. Cleco Corp.*, 926 F.Supp.2d 886, 891 (W.D. La. 2013) (citing *Jones*, 541 U.S. at 373). "Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of Section 1981 or is only made possible by the 1991 amendments." *Id.* (citing *Jones*, 541 U.S. at 382). Where the Plaintiff's claim was available under the original Section 1981, the court must apply the analogous state

statute of limitations, which in Louisiana is one year. *See id.* at 371; *Taylor*, 775 F.2d at 618. However, where the claim is only available under Section 1981, as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by Section 1658 applies. *See Jones*, 541 U.S. at 382.

Here, Plaintiff claims racial discrimination based on alleged conduct that occurred during his employment with Defendant; therefore, Plaintiff's claim arose under the Civil Rights Act of 1991 and the federal four-year statute of limitations applies. *See also Balakrishnan v. Board of Sup'rs of Louisiana State Univ. and Agr. and Mech. College*, 2009 WL 2175974, *6-7 (E.D. La. July 21, 2009) (four-year statute of limitations applied to claims of racial discrimination under Section 1981). As such Plaintiff's Section 1981 claim is not time-barred and the Court will examine the claim on its merits.

## IV. The Merits of Plaintiff's Section 1981 Claim

Plaintiff's claim of racial discrimination in employment brought pursuant to Section 1981 is analyzed under the same standards as Title VII claims. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). In the absence of direct evidence,[5] Title VII cases are governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973); *see also, Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), as revised (June 22, 2012). Under the

---

[5] Plaintiff has neither alleged nor submitted to the Court any direct evidence of racial discrimination in response to the Defendant's Motion.

*McDonnell Douglas* framework, once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to show a legitimate non-discriminatory reason for its actions. *Odubela v. Exxon Mobil Corp.*, 736 Fed. Appx. 437, 443 (5th Cir. 2018). "The burden on the employer at this stage 'is one of production, not persuasion; it can involve no credibility assessment.'" *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)).[6] "If the employer produces a legitimate alternative reason, 'the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is ... a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct,' with the plaintiff's race being another 'motivating factor.'" *Odubela*, 736 Fed. Appx. at 443 (quoting *Alvarado*, 492 F.3d at 611).

### *Prima Facie* Case of Discrimination

Generally, a plaintiff can establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably than other similarly situated employees who were not members of the protected class under nearly identical circumstances, or he was replaced by someone outside of the protected group. S*ee*

---

[6] "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

*McDonnell Douglas Corp*, 411 U.S. at 802 & n.13; *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Here, Defendant concedes that Plaintiff is a member of a protected class and that Plaintiff was discharged from employment. Defendant's Motion does not directly address whether, (i) Plaintiff was qualified for his position (element two), or (ii) whether Plaintiff was treated less favorably than other employees of a different class (element four). The Court will address both of these elements in turn.

### a) Plaintiff's Qualification

The Fifth Circuit has held that in order for a plaintiff to show that he was qualified for a position, he must demonstrate only that "he continued to possess the necessary qualifications for his job at the time of the adverse action." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). Although Plaintiff has not submitted any evidence to prove the second element, Defendant does not argue that Plaintiff was unqualified for the position of correctional officer. Indeed, the fact that Plaintiff was hired for the position of correctional officer and maintained that position until his termination in the wake of the relevant sexual harassment allegation suggests that he was sufficiently qualified.

### b) Disparate Treatment

The Court now turns to element four of the Plaintiff's *prima facie* case of discrimination. This element requires Plaintiff to show that either: (i) he was replaced by someone outside of his protected class, or (ii) that he was treated less favorably

than a "similarly situated comparator of another race," *i.e.*, disparate treatment.[7] *Harris v. Drax Biomass Inc.*, 813 Fed. Appx. 945, 948 (5th Cir. 2020). Here, Plaintiff alleges disparate treatment.

The Fifth Circuit has held that to be "similarly situated" the employees being compared must have: "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). In addition, the conduct that drew the adverse employment action must have been "'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004)).

Plaintiff offers as a comparator, another correctional officer employed by GEO, T.R., who is a white female that retained her position despite a substantiated allegation of sexual harassment. In contrast, Belton, a black male, was discharged notwithstanding the fact that the sexual harassment allegation against him was ultimately not substantiated. [Doc. 32, p.12-14].[8] The only evidence Plaintiff offers to support his contention that T.R. and Belton were similarly situated employees is his inclusion of the Disciplinary Action Forms that were prepared by GEO after the

---

[7] The Court notes that Plaintiff, in his supporting memorandum, lists the elements of a disparate *impact* claim. [*See* Doc. 32, p.12]. "A disparate impact claim is not legally viable under § 1981. Section 1981 requires proof of intentional discrimination." *Collins-Pearcy v. Mediterranean Shipping Co. (USA), Inc.*, 698 F.Supp.2d 730, 741 (S.D. Tex. 2010) (citing *Nat. Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 714-15 (5th Cir. 1994)).

[8] Defendant does not address Plaintiff's contention that T.R. is similarly situated.

sexual harassment allegations were made against each employee. Indeed, Plaintiff and T.R. held the same job. Both employees were correctional officers at the time the allegations were made. [*See* Doc. 32-6, p. 2; Doc. 32-7, p. 1]. Both employees were accused of sexual harassment. [*Id.*].[9] In addition, T.R. had four disciplinary violations on attendance-related matters in the 12 months prior to the allegations being made against her, while Plaintiff had none. [*Id.*]. Thus, while Plaintiff and T.R. did not share "essentially comparable violation histories," Plaintiff arguably had a *better* documented employment history. *Lee*, 574 F.3d at 260.

On the other hand, Plaintiff and his proffered comparator had different supervisors. Plaintiff's Disciplinary Action Form lists "Lt. R. Gurganus" as his supervisor, while T.R.'s Disciplinary Action Form lists "Lt. Harry Davis" as her supervisor. [Doc. 32-6; Doc. 32-7]. Although the supervisor listed on Plaintiff's Disciplinary Action Form may not have been Plaintiff's only supervisor,[10] Plaintiff testified that he "really didn't work with Lieutenant Davis as much because he was on nights." [Doc. 36-1, p.33]. Thus, not only do the employees' Disciplinary Action Forms list different supervisors, but Plaintiff admitted that T.R.'s supervisor, Lt.

---

[9] The Court recognizes that even though both officers were accused of sexual harassment, "the mere fact that two situations can be classified in the same broad category is a far cry from their being nearly identical." *Dodge v. Hertz Corp.*, 124 Fed. Appx. 242, 244 (5th Cir. 2005). However, the Court does not rely on the specific details of each employees' alleged conduct, substantiated or unsubstantiated, to make its ruling. The Court construes this fact broadly in the light most favorable to the non-moving party, the Plaintiff.

[10] At his deposition, Plaintiff was asked, "[d]o you remember who your supervisor was?" [Doc. 36-1, p.14]. Plaintiff testified that he "kind of like worked with all at one point." [*Id.*].

Harry Davis, was not his supervisor. "Employees with different supervisors ... generally will not be deemed similarly situated." *Lee*, 574 F.3d at 259.

Moving on from this, Plaintiff must show that "he was treated less favorably [than T.R.] … *under nearly identical circumstances.*" *Lee*, 574 F.3d at 259 (emphasis added). In addition to reporting to different supervisors, T.R.'s and Plaintiff's circumstances varied significantly. On March 28, 2017, shortly after Roberts accused Defendant of sexual harassment, the Jena Police Department was contacted. Law enforcement officers interviewed both employees regarding the alleged incident. The next day, Defendant placed Plaintiff "on administrative leave pending investigation." [Doc. 32-6]. Thereafter, on April 10, 2017, Plaintiff was charged by the district attorney with simple battery. Plaintiff was on administrative leave from March 29, 2017, until he was terminated on August 7, 2017, at which time criminal charges were still pending against him.[11]

In contrast with Plaintiff's circumstances, there is no evidence in the record indicating that T.R. was ever charged with a crime related to the 2013 sexual harassment allegation against her. And although the criminal charges against Plaintiff were ultimately dismissed by the district attorney, the charges were pending at the time Plaintiff was terminated. In this regard, the Court must evaluate GEO's decision at the time the employment decision was made, without the advantage of

---

[11] Defendant maintains, and Plaintiff does not dispute, that Plaintiff was provided the three-month period of administrative leave to resolve the pending criminal charges. Belton was unable to obtain a dismissal of the charges within this timeframe. [Doc. 27-3 ¶ 9; Doc. 34 ¶ 9].

hindsight. *See Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) ("[W]e do not view the discrimination laws as vehicles for judicial second-guessing of business decisions."). Though an employer's decision may seem unfair in retrospect, that does not make the decision discriminatory. *See Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir.1997) ("Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus."). Because Plaintiff has failed to make the requisite showing that he was treated less favorably "under nearly identical circumstances," he cannot establish a *prima facie* case for Section 1981 racial discrimination. *Lee*, 574 F.3d at 259.[12] Accordingly, Defendant's Motion is granted as to Plaintiff's racial discrimination claim brought pursuant to 42 U.S.C. § 1981.

## V. <u>Timeliness of Plaintiff's State Law Discrimination Claims</u>

Defendant next contends that Plaintiff's Louisiana Employment Discrimination Law ("LEDL") claims should be dismissed because they were filed after the prescriptive period had expired. Discrimination claims brought under the LEDL are subject to a one-year prescriptive period. La. R.S. 23:303(D). "This one-year prescriptive period commences to run from the day injury or damage is sustained." *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999). The one-year prescriptive period for LEDL claims is suspended during the pendency of any administrative review or investigation of the claims conducted by the federal Equal

---

[12] Plaintiff also claims a "Lieutenant Naggy" is similarly situated, however, he provides no information for this Court to use in substantiating this claim. [*See* Doc. 32, p.13].

Employment Opportunity Commission, but no such suspension "shall last longer than six months." La. R.S. 23:303(D).

Here, the one-year prescriptive period began to run on August 7, 2017, when Defendant terminated Plaintiff's employment. Plaintiff filed his EEOC Charge 358 days later, on July 31, 2018, suspending the one-year prescriptive period with seven days remaining in the period. Thereafter, 43 days later, on September 12, 2018, the EEOC issued the right-to-sue letter. [Doc. 32-10]. No evidence has been presented to establish when Plaintiff received the EEOC letter. Although the Louisiana statute does not state that prescription remains suspended until plaintiff receives his right-to-sue letter from the EEOC, the Court finds this to be the appropriate date to commence the running of prescription.[13] "When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Taylor*, 296 F.3d at 379; *accord Washington v. City of Gulfport, Mississippi*, 351 Fed. Appx. 916, 918 (5th Cir. 2009).

Even if the Court commences the prescriptive period seven days after the EEOC mailed the letter, Plaintiff's claims are still untimely. Prescription had run for 358 days before it was suspended by Plaintiff's filing of his EEOC Charge. Presuming Plaintiff received the letter seven days later, on September 19, 2108, Plaintiff had seven days to file a timely lawsuit. Plaintiff did not file the instant action until

---

[13] *See Briggs v. Florida Parishes Juv. Just. Comm'n*, 17-1189, p. 5 (La. App. 1st Cir. 3/12/18), 244 So. 3d 438, 440 (finding that the suspended prescriptive period commenced to run on the date the employee received the right-to-sue letter from the EEOC).

December 12, 2018, almost three months after receiving the letter. Accordingly, Plaintiff's LEDL claims have prescribed.

Plaintiff's argument that his LEDL claims were timely because they were filed within 90 days of receipt of the right-to-sue letter is misplaced. "[T]he 90-day deadline from receipt of the EEOC letter that applies to the federal claims[ ]does not apply to [Plaintiff's] claim[s] under Louisiana law." *Lee v. Columbia/HCA of New Orleans, Inc.*, 611 Fed. Appx. 810, 813 (5th Cir. 2015). Defendant's Motion is granted as to Plaintiff's LEDL claims.

## VI. Timeliness of Plaintiff's State Law Tort Claims

Defendant likewise argues that Plaintiff's state law torts claims for "negligent and/or intentional infliction of mental distress" are time-barred. [Doc. 1-4, p. 3-4]. Plaintiff's tort claims are subject to a one-year prescriptive period. *Lanzas v. American Tobacco Co., Inc.*, 2002 WL 1973817, at *2 (5th Cir. 2002). ("[Plaintiff's] delictual claims for … negligent infliction of emotional distress[ and] intentional infliction of emotional distress … are subject to a one-year prescriptive period that begins to run from the date of injury."); La. Civ. Code art. 3492.

Plaintiff insists that the basis for these tort claims are the "hostile and racially infused [work] environment." [Doc. 32, p. 15]. The Court presumes, out of an abundance of caution, that Plaintiff was injured for purposes of these claims on August 7, 2017, the date he was terminated (despite the fact Plaintiff never returned to work after March 29, 2017, when he was placed on administrative leave). In addition, Plaintiff has not pointed to any event that occurred between the parties

after August 7, 2017. Accordingly, Plaintiff's state law tort claims had prescribed – at the latest – when he filed suit on December 12, 2018, more than 16 months after he was terminated. Defendant's Motion is granted as to Plaintiff's state law tort claims.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. 27] is GRANTED and that all claims against Defendant, The GEO Group, Inc., are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 10th day of March 2021.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE