# United States Court of Appeals
FIFTH CIRCUIT
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

December 30, 2021

Mr. Tony R. Moore
Western District of Louisiana, Shreveport
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

      No. 21-30144    Belton v. GEO Group
                          USDC No. 1:19-CV-133

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

By: *Shea E. Pertuit*
Shea E. Pertuit, Deputy Clerk
504-310-7666

cc:
    Mr. Russell Lory Foster
    Ms. Haley E. Nix
    Ms. Aisha Arlene Sanders
    Mr. Everett T. Sanders



# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 8, 2021
Lyle W. Cayce
Clerk

**Certified as a true copy and issued
as the mandate on Dec 30, 2021**

Attest: *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 21-30144

PAUL BELTON,

*Plaintiff—Appellant*,

versus

GEO GROUP, INCORPORATED,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:19-CV-133

_____

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 8, 2021
Lyle W. Cayce
Clerk

No. 21-30144

Paul Belton,

*Plaintiff—Appellant*,

versus

GEO Group, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC 1:19-CV-133

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Per Curiam:[*]

This case concerns whether the district court properly dismissed the appellant's claims for racial discrimination under Title VII, 42 U.S.C. § 1981, and Louisiana state law. The district court properly held that Appellant's Title VII and Louisiana state law claims were time barred and that Appellant

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30144

could not make a prima facie case of racial discrimination as required by § 1981. We affirm.

I.

Paul Belton, a black male correctional officer working for GEO Group, was fired on August 7, 2017. On March 28, 2017, Sergeant Tammy Roberts, a white female employee of GEO, accused Belton of sexual harassment and assault at the LeSalle Detention Facility in Jena, Louisiana, where they both worked. Roberts reported this incident and the Jena Police Department was called; Officer Joseph Spence of the Jena Police Department spoke with Roberts that day. The following day, written statements were taken from both Roberts and Belton.

According to Roberts, at approximately 5:15 pm on March 28, 2017, Belton followed her into the Lieutenants' office and walked up behind her. As she turned around, Belton leaned in, attempted to kiss her, and grabbed her between her legs in the "crotch area." Roberts reported that she said "no" and told him to "stop" but he "leaned in again to attempt to kiss her." Roberts also reported that two "similar incidents" had occurred two weeks earlier, but she did not report those instances "thinking he would leave [her] alone but he did not."

The next day, Belton was placed on unpaid administrative leave pending an investigation into the allegations. On April 10, Belton was charged with misdemeanor sexual battery under Louisiana Revised Statute § 14:35.14; during plea negotiations the charges were increased to a felony.

On August 7, 2017, while the criminal charges were still pending, Belton was fired. Included with the termination letter was a disciplinary action form stating that Belton had been fired for violating GEO policy 3.2.10, "Sexual and Workplace Harassment."

No. 21-30144

On November 28, 2017, Belton received Roberts's personnel file and discovered that Roberts had also been accused of sexual harassment and violating GEO policy 3.2.10. Roberts had received a final reprimand and had been required to participate in a retraining on sexual harassment. In addition, Roberts had four disciplinary violations on attendance related matters, while Belton had none.

On July 31, 2018, nearly a year later, the charges against Belton were dismissed. The same day, Belton filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he had been subject to racial discrimination in the form of a hostile environment and disparate treatment regarding his termination. On September 12, 2018, the EEOC issued a right to sue letter to Belton.

On December 12, 2018, Belton brought suit in Louisiana state court, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Louisiana's Employment Discrimination Law (LEDL), and Louisiana tort law. GEO removed the suit to federal court.[1] GEO moved for summary judgment, seeking dismissal of all claims. The district court granted summary judgment, finding that Belton's Title VII, LEDL, and state law tort claims were time barred. The district court also found that Belton failed to establish a prima facie case of discrimination as necessary for a § 1981 claim. The district court dismissed Belton's claims with prejudice. Belton timely appealed.

## II.

We review *de novo* a district court's grant of summary judgment, viewing all evidence and drawing reasonable inferences in favor of the non-

---

[1] 28 U.S.C. § 1331.

No. 21-30144

moving party.[2] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] "This court may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court."[5]

### III.

The district court dismissed Belton's Title VII, LEDL, and Louisiana tort law claims as time barred. We affirm.

### A.

A plaintiff alleging discrimination claims must exhaust administrative remedies before filing suit.[6] In a deferral state, such as Louisiana, the time to file an EEOC charge is extended by state discrimination law, so a plaintiff has

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

[3] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[4] *Harville v. City of Hous.*, 945 F.3d 870, 874 (5th Cir. 2019) (citation and internal quotation marks omitted).

[5] *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 682 (5th Cir. 2020) (citation omitted).

[6] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also Jones v. City of Hous.*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)) (per curiam).

Case: 21-30144 Document: 00516149260 Page: 7 Date Filed: 12/30/2021
Case 2:19-cv-01331-DCJ-DEW Document 54-1 Filed 04/15/22 Page 7 of 13 PageID #: 496

No. 21-30144

300 days from the discriminatory act to file the charge with the EEOC.[7] Any claims filed later than 300 days later are time barred.[8]

Belton contends that the EEOC filing period should not have started accruing until November 2017, when he became aware of how Roberts was treated after a complaint of sexual harassment was made against her. Belton alleges that he was unaware that he had been discriminated against until he learned that Roberts had also had a sexual harassment complaint levied against her, but that she had not been fired. However, "it is clearly established that the limitations period starts running when the plaintiff knows of the discriminatory act, not when the plaintiff perceives a discriminatory motive behind the act."[9] And "[t]o allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints."[10]

Here, the allegedly discriminatory act occurred on August 7, 2017, when GEO fired Belton. The discriminatory act is not Belton's discovery of

---

[7] Although generally one has 180 days from a discriminatory act to file a charge with the EEOC, in a deferral state "[t]he 180 calendar day filing deadline is extended to 300 calendar days if a state or local agency enforces a law that prohibits employment discrimination on the same basis." *Time Limits for Filing a Charge*, U.S. EQUAL EMP. COMM'N, https://www.eeoc.gov/time-limits-filing-charge (last visited Dec. 3, 2021).

[8] *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 555–56 (5th Cir. 1987).

[9] *Miller v. Potter*, 359 F. App'x 535, 536–37 (5th Cir. 2010) (per curiam) (citing *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992)); *Abels v. Braithwaite*, 832 F. App'x 335, 336 (5th Cir. 2020) (per curiam) (This Court has "consistently focused on the date that plaintiff knew of the discriminatory *act*."); *Eastin v. Entergy Corp.*, 865 So. 2d 49, 54 (La. 2004) ("In both *Ricks* and *Chardon*, the United States Supreme Court determined that suits brought more than one year from the date of notice of the termination are time barred as the proper focus is on the time of the discriminatory act not the point at which the consequences of the act become painful." (cleaned up)).

[10] *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992).

how Roberts was treated, it is his termination. He did not file his EEOC Charge until July 31, 2018. This was 358 days after the discriminatory act at issue—the 300-day filing period had thus expired. The district court did not err when it found that Belton's Title VII claim was time barred.

Alternatively, Belton argued that the filing period should have been tolled while GEO's Office of Professional Responsibility (OPR) investigation was pending. Although we do not consider this argument as it was raised for this first time on appeal, this argument would also fail.[11]

## B.

The district court dismissed Belton's LEDL claims because they were filed after the prescriptive period expired. Discrimination claims brought under LEDL are subject to a one-year prescriptive period.[12] As with the Title VII claims, "[t]his one-year prescriptive period commences to run from the day injury or damage is sustained."[13] Thus, the one-year prescriptive period began to run on August 7, 2017, when GEO terminated Belton.

---

[11] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) ("[T]he plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment."); *see also Buchanan v. CCA/Tallahatchie Cnty. Corr. Facility*, 704 F. App'x 307, 308–09 (5th Cir. 2017) (per curiam) ("The mere pendency of her grievance, however, is an insufficient basis to find the district court abused its discretion in declining to apply equitable tolling."); *West v. Miss. Dep't of Pub. Safety*, 37 F. App'x 712, 712 (5th Cir. 2002) (per curiam) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." (quotation omitted)).

[12] LA. STAT. ANN. § 23:303(D) (2008).

[13] *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999); *see also Eastin v. Entergy Corp.*, 865 So. 2d 49, 53–54 (La. 2004) ("[I]t is well settled that the damage is sustained in any employment discrimination case at the earlier of the date the employee is informed of his termination or his actual separation from employment.").

No. 21-30144

The one-year prescriptive period for LEDL claims is suspended during any pending administrative review or investigation by the EEOC.[14] The suspension period does not apply to GEO's internal OPR investigation, only to investigations by the EEOC or the Louisiana Commission on Human Rights.[15] Thus, the one-year prescriptive period was suspended from when Belton filed his EEOC charge, on July 31, 2018, until the EEOC issued its right-to-sue letter, 43 days later, on September 12, 2018.[16] However, the one-year prescriptive period had already run for 358 days when it was suspended by Belton filing his EEOC charge. After the suspension ended, Belton would only have had seven days to timely file suit. Belton did not file his LEDL claims until December 12, 2018, well after the one-year prescriptive period had elapsed.[17] Belton's LEDL claims were prescribed.

## C.

The district court also found that Belton's state law tort claims for "negligent and/or intentional infliction of mental distress" were time barred. These tort claims are also subject to a one-year prescriptive period.[18] Belton was terminated on August 7, 2017; he has not alleged that any discriminatory conduct or harassment occurred after that date. Thus the prescription period

---

[14] LA. STAT. ANN. § 23:303(D) (2008) (although no suspension "shall last longer than six months"); *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

[15] LA. STAT. ANN. § 23:303(D) (2008).

[16] *See Briggs v. Fla. Pars. Juv. Just. Comm'n.*, 244 So. 3d 438, 440 (La. Ct. App. 1st Cir., 2018) (finding that the suspended prescriptive period commenced to run on the date the employee received the right-to-sue letter from the EEOC).

[17] The 90-day deadline to sue from receipt of the EEOC letter applies only to federal claims; it does not apply to Belton's state law claims. *See* LA. STAT. ANN. § 23:303(D) (2008).

[18] LA. CIV. CODE ANN. art. 3492 (1984).

Case: 21-30144 Document: 00516149260 Page: 10 Date Filed: 12/30/2021
Case 2:18-cv-01344-DCJ-JPM Document 51 Filed 01/03/22 Page 10 of 22 PageID #: 499

No. 21-30144

for Belton's tort law claims began, at the latest, on August 7, 2017. Accordingly, the district court did not err when it found that Belton's state law tort claims were prescribed before he filed suit on December 12, 2018, more than 16 months after his termination.

## IV.

### A.

Belton also sued GEO under § 1981. GEO does not contest that this claim is timely. Section 1981 does not contain a statute of limitations; for actions arising under federal statutes enacted after December 1, 1990, courts apply a catchall four-year statute of limitations.[19] Section 1981 was originally enacted as part of the Civil Rights Act of 1866. At that time it only protected against discrimination at the time of contract formation.[20] However, "§ 1981 was later amended by the Civil Rights Act of 1991 to create a new cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract."[21] Where the claim is only available under the amended § 1981, the cause of action is said to arise under the Civil Rights Act of 1991.[22] Here, the alleged racial discrimination occurred during Belton's employment. This is discrimination during the contract period rather than at the time of contract formation. Therefore, his claims arose under the Civil

---

[19] 28 U.S.C. § 1658.

[20] *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 373 (2004) (citing *Patterson v. McClean Credit Union*, 491 U.S. 164, 179 (1989)).

[21] *Culbert v. Cleco Corp.*, 926 F. Supp. 2d 886, 891 (W.D. La. 2013).

[22] *See id.* (citing *Jones*, 541 U.S. at 382).

No. 21-30144

Rights Act of 1991 and the four-year statute of limitations applies.[23] Belton's § 1981 claims were not time barred.

**B.**

Racial discrimination claims under § 1981 are analyzed under the same standard as Title VII claims.[24] Where, as here, there is no direct evidence, this Court uses the *McDonnell Douglas* burden-shifting framework.[25] First, the plaintiff must establish a prima facie case of discrimination. Then, the defendant must offer a legitimate, non-discriminatory reason for its actions.[26] The burden then shifts back to the plaintiff to rebut the stated reasons and show that they are "merely pretextual."[27] Here, the district court found that Belton did not make a prima facie case. Viewing all evidence in favor of Belton, we agree.

A plaintiff can establish a prima facie case of racial discrimination by showing that (1) he is a member of a protected class; (2) he is qualified for the position at issue; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class or treated less favorably than someone outside the protected class.[28] The first three requirements are not at issue here. To satisfy the fourth element, Belton must

---

[23] *See Jones*, 541 U.S. at 382; *see also Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 08-4315, 2009 WL 2175974, at *6–7 (E.D. La. July 21, 2009).

[24] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

[25] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).

[26] *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

[27] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[28] *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223–24 (5th Cir. 2000).

Case: 21-30144 Document: 00516149260 Page: 12 Date Filed: 12/30/2021
Case 2:19-cv-00133-DCJ-JPM Document 49-1 Filed 04/13/22 Page 12 of 23 PageID #: 501

No. 21-30144

show either that he was replaced by someone outside of his protected class or that he was treated less favorably than a similarly situated comparator outside the protected class.[29] Here, Belton alleges he was treated less favorably by GEO than Roberts was in response to the sexual harassment allegations brought against each of them.

This Court requires that a plaintiff proffering a comparator must "demonstrate that the employment actions at issue were taken under nearly identical circumstances."[30] Although the district court took issue with Belton's comparator, Roberts, because they had different supervisors, we do not "interpret nearly identical as synonymous with identical."[31] The "ultimate decisionmaker as to employees' continued employment" was the same, and thus Roberts could have been a valid comparator.[32]

Belton argues that he was discriminated against because although both he and Roberts received disciplinary sanctions for sexual harassment, he was fired, while she was not. However, to make a prima facie showing on racial discrimination, Belton must show that "he was treated less favorably . . . under nearly identical circumstances."[33] Belton and Roberts did not face nearly identical circumstances. The criminal charges against Belton were still pending when he was fired. We must evaluate GEO's decision at the time it was made, without the advantage of knowing that the

---

[29] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

[30] *Id.* (citation omitted).

[31] *Id.* at 260; *see also Turner*, 675 F.3d at 896 (employees with different job responsibilities could still be comparators where the person responsible for ultimate decisions like termination and suspension was the same).

[32] *Lee*, 574 F.3d at 260 (internal quotation marks omitted).

[33] *Id.* at 259.

charges were later dismissed.[34] There is no evidence that Roberts was ever criminally charged regarding the sexual harassment complaints made against her. Given the difference in circumstances surrounding Belton and Roberts, Roberts is not a valid comparator and Belton has not made a prima facie showing that he was racially discriminated against under § 1981.[35]

## V.

Belton's Title VII, LEDL, and state tort claims were time barred. Further, Belton failed to make a prima facie showing of racial discrimination under § 1981. We AFFIRM the ruling of the district court.

---

[34] *Turner*, 675 F.3d at 896 ("[T]he relevant perspective is that of the employer at the time of the adverse employment decision."); *see Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (Title VII does not protect against unfair business decisions).

[35] *Lee*, 574 F.3d at 259.